UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CLARENDON NATIONAL INSURANCE
COMPANY, a foreign corporation, and
AMERICAN HALLMARK INSURANCE
COMPANY OF TEXAS, a Texas corporation,

        Plaintiffs,

        v.

BUENA VISTA CUSTOM HOMES, INC.,
an Oregon corporation,

        Defendant,

    and

SCOTT MEYERS, an individual,

        Intervenor-Defendant.

Civil No. 12-712-HA
[Related Case No. 12-715-HA]

OPINION AND ORDER

---

HAGGERTY, District Judge:

        Plaintiffs Clarendon National Insurance Company (Clarendon) and American Hallmark

Insurance Company of Texas (Hallmark) bring a complaint seeking declaratory judgment and

reformation of insurance contracts with defendant Buena Vista Custom Homes, Inc. (Buena

Vista). Scott Meyers (Meyers) intervenes on behalf of Buena Vista homeowners, asserting that

Buena Vista's former policies with Clarendon and Hallmark provide liability coverage for

OPINION AND ORDER - 1

problems with Buena Vista's homebuilding projects. Clarendon and Hallmark filed motions for summary judgment, and Meyers filed cross-motions. Oral argument was heard on December 10, 2012. For the following reasons, plaintiffs' Motions for Summary Judgment [15 and 18] are granted and defendant's Cross-Motions for Summary Judgment [21 and 24] are denied.

## BACKGROUND

Buena Vista was formerly one of the largest home builders in the state of Oregon. During the time frame relevant to this case, Buena Vista, Clarendon, and Hallmark acted through various agents in order to negotiate insurance contracts. Buena Vista negotiated the insurance policies for its properties through its insurance agent, Contractors Insurance Services, Inc. (CISI). Clarendon and Hallmark communicated with potential insureds through the same underwriter, Millers General Agency, Inc. (MGA). In 2003, MGA was reorganized under a new name, Hallmark General Agency (HGA). Both Clarendon and Hallmark continued to use HGA as their underwriter; however, after 2005 all renewals of Clarendon policies were instead renewed with Hallmark because Clarendon was in a period of "run-off" and was not issuing new policies. Underwriter Kim McGuffey oversaw all of the policies issued to Buena Vista through MGA and HGA.

From December 2002, through December 2006, CISI obtained commercial general liability coverage for Buena Vista's homebuilding properties through North American Specialty insurance Company (North American) and Quanta Indemnity Company (Quanta). During that period, Buena Vista obtained some mobile trailers and asked its insurer (North American at the time) if it could provide inland marine coverage for the trailers. North American refused on the grounds that its policy with Buena Vista was a monoline policy, which covered liability only for

OPINION AND ORDER - 2

the homebuilding projects and not commercial leased properties.  Rossmiller Decl., Ex. 2, p. 6.

Buena Vista approached Clarendon about coverage, and Clarendon issued a policy to Buena

Vista for inland marine coverage and commercial property coverage from September 2003 to

September 2004.  Buena Vista renewed this policy from September 2004 to September 2005.

In February 2005, Buena Vista approached its general liability insurer (then Quanta)

about adding liability insurance to one of its leased properties, located at 269 A Avenue, Lake

Oswego, Oregon.  Quanta refused.  Rossmiller Decl., Ex. 2, p. 9.  Buena Vista again approached

Clarendon, this time to add liability coverage to its existing inland marine and commercial

property coverage.  Buena Vista requested the addition via email, asking if Clarendon would

"add [general liability] specific to [the 269 A Avenue] location." *Id.*

After some discussion, Clarendon said it would add liability coverage to Buena Vista's

existing policy through a "designated premises [endorsement]."  Rossmiller Decl., Ex. 2, p. 10.

When the policy was finalized, however, Clarendon neglected to attach the endorsement to the

policy, which would have expressly limited the liability coverage to the 269 A Avenue property.

Buena Vista's endorsement worksheet, however, reflected that the coverage extended to

"buildings or premises - bank or office - mercantile or manufacturing (lessor's risk only) - other

than not-for-profit."  Rossmiller Decl., Ex. 4, p. 3.  The additional coverage cost Buena Vista a

premium of $92.  *Id.*  At the time, Buena Vista had a general liability coverage policy with

Quanta, which cost Buena Vista a premium of $205, 572.  When the 269 A Avenue property was

sold, Clarendon removed the liability coverage from Buena Vista's policy.

In April 2005, Buena Vista asked Clarendon to add two other A Avenue properties to its

policy, specifying that it "only want[ed] liability insurance on these two properties."  Rossmiller

OPINION AND ORDER - 3

Decl., Ex. 2, p. 11.  Clarendon replied that it would "endorse these two locations onto the

Clarendon policy for liability only, no building coverage." Rossmiller Decl., Ex. 2, p. 11.

Buena Vista paid a premium of $163 for the coverage. Rossmiller Decl., Ex. 7, p. 27.

In September 2005, Buena Vista renewed the coverage it had under the 2005 Clarendon

policy; however, by this time, Clarendon's underwriter (HGA) was renewing all Clarendon

policies through Hallmark. Although the policy was renewed through a new insurer, CISI's

activity record shows that the renewal contained "no changes." Rossmiller Decl., Ex. 2, p. 13.

In September 2006, Buena Vista chose not to renew its Hallmark policy for another year and

instead canceled it.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show there is

no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*,

929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and

meets this burden by identifying portions of the record on file that demonstrate the absence of

any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once

the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through

the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party.

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).

All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the

moving party. *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005)

OPINION AND ORDER - 4

(citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

### A. Hallmark's Motion for Summary Judgment and Meyers' Cross-Motion

At all points during their dealings with Buena Vista, Clarendon and Hallmark operated under the same underwriting company. Buena Vista's policy with Hallmark was a renewal of Buena Vista's second policy with Clarendon. Hallmark incorporates the arguments raised in Clarendon's motion into its own.

Meyers argues that Hallmark should not be allowed to merely incorporate Clarendon's arguments as its own, because in a reformation case the court is required to determine whether an agreement existed "between the parties." Meyers argues that Buena Vista's contract with Hallmark was distinct from its contract with Clarendon, and that Hallmark must separately prove the terms of the agreement between Buena Vista and Hallmark.

////

OPINION AND ORDER - 5

However, because Buena Vista agreed that the first Hallmark policy would merely renew the second Clarendon policy without change, the terms of the parties' antecedent agreement reach back to the original agreement Buena Vista made with Clarendon. Buena Vista communicated with the same underwriter in order to affect the renewal; in fact, the same individual (Kim McGuffey) oversaw all Buena Vista policies at HGA and communicated about the renewal with CISI. Although Clarendon and Hallmark are distinct companies, Buena Vista agreed to the policy with Hallmark as a renewal of the terms originally agreed to with Clarendon.

### B. Clarendon's Motion for Summary Judgment and Meyers' Cross-Motion

Clarendon argues that it is entitled to declaratory judgment that it has no obligation to defend Buena Vista for any claims against it regarding properties other than those specifically added to its policy in February and April 2005. Clarendon asserts that the parties had a mutual understanding that the liability coverage extended only to those properties, and that the written policy does not accurately reflect the parties' agreement because Clarendon accidentally omitted the designated premises endorsement. Clarendon seeks reformation of the contract to reflect that Clarendon only provided liability coverage for the three properties, none of which are at issue in the homeowner lawsuits against Buena Vista.

A contract can be reformed when the party moving for reformation demonstrates that the written contract does not reflect the mutual understanding of the parties. *Jensen v. Miller,* 570 P.2d 375, 376-377 (Or. 1977). The party moving for reformation must prove by clear and convincing evidence that there was an antecedent agreement to which the contract can be reformed, that there was a mutual mistake, and that the party seeking to reform the policy was not grossly negligent. *Murray v. Laugsand,* 39 P.3d 241, 246 (Or. Ct. App. 2002). Clear and

OPINION AND ORDER - 6

convincing evidence is evidence that makes a fact in issue highly probable. *Riley Hill General Contractor, Inc. v. Tandy Corp.*, 737 P.2d 595, 602 (Or. 1987).

### 1. Meyers' evidentiary objections

Meyers makes numerous evidentiary objections pursuant to Federal Rule of Civil Procedure (FRCP) 56(c)(2), which allows parties to object that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Meyers' objections to several of the statements in Clarendon's brief can be divided into four basic categories: (1) objections that Clarendon has no personal knowledge of the information in its brief, (2) objections that Clarendon failed to support its statements by citing to a declaration, (3) objections that Clarendon's statements constitute unsupported expert testimony, and (4) objections that references to statements made by Buena Vista and CISI constitute inadmissible hearsay.

### a. Lack of personal knowledge

Meyers objects that Clarendon has no personal knowledge of Buena Vista's employees, CISI's employees, or Buena Vista's relationship and interactions with CISI and other insurers, and that Clarendon's statements regarding those facts are inadmissible. Clarendon argues that this information is apparent from materials in the record, including the authenticated CISI file, the Quanta and North American policies, and the Construction Contractors Board (CCB) records.

FRCP 56(c)(4) provides that an affidavit or declaration used to support a motion for summary judgment must be made on personal knowledge. However, parties need not base all of their assertions on personal knowledge, and may instead support their assertions by citing to a variety of materials, so long as they are included in the record. FRCP 56(c)(1)(A).

OPINION AND ORDER - 7

Buena Vista's relationship with its insurers and with CISI can be inferred through the materials provided by Clarendon. The CCB records and the Quanta and North American policies show that Buena Vista had entered into general commercial liability contracts with those insurers. Additionally, Clarendon submits the supplemental declaration of Kim McGuffey, who negotiated with CISI employees on behalf of MGA and HGA. McGuffey's declaration reflects her personal knowledge of the identity of CISI employees and of the agency relationship between CISI and Buena Vista. Because Clarendon supports its assertions with evidence in the record, Meyers' personal knowledge objections are overruled.

### b. Failure to cite a declaration

Meyers also objects that Clarendon fails to cite a declaration that would support several of the factual assertions made in its brief. FRCP 56(c)(1)(a), however, permits parties to prove that facts are undisputed by citing to a variety of materials in the record, including depositions, affidavits, documents, electronically stored information, and other materials. Clarendon is not required to cite only declarations in order to support its argument. In its response, Clarendon provides citations to declarations and documents in support of the statements objected to by Meyers. Because Meyers does not object to the admissibility of the materials themselves, his objections that those statements are overruled.

### c. Unsupported expert testimony

Meyers also objects that Clarendon's explanation of insurance terminology is inadmissible because it constitutes unsupported expert testimony. Clarendon offers, for purposes of assisting the court, definitions and explanations of various insurance concepts used in its brief. Clarendon requests that the court take judicial notice of those facts, which it asserts are common

OPINION AND ORDER - 8

knowledge in the insurance world and are readily available upon a brief internet search.

Meyers' objection is overruled.  The parties agreed at oral argument that the definitions provided are accurate.  Clarendon's statements regarding the cost of certain types of insurance policies is supported by the Quanta and Clarendon policies in the record.

The court denies, however, Clarendon's request for judicial notice.  When the matter is not specifically and distinctly argued in appellant's opening brief, the court need not consider a request for judicial notice first made in a reply brief. *Doty v. State Farm Fire & Casualty*, No. 91-16381, 1993 U.S. App. LEXIS 1439, *9 (9th Cir. 1993).

### d. Hearsay

Finally, Meyers objects that Clarendon's reference to statements made by CISI and Buena Vista constitute inadmissible hearsay.  However, FRE 801(d)(2) provides that statements offered against a party opponent that were made by the party opponent or its agent are not hearsay. Buena Vista is a party opponent in this case, and CISI acted as Buena Vista's agent with regard to its insurance dealings.  Thus, statements made by Buena Vista and CISI are excluded from the hearsay rule, and Meyers' objections are overruled.

### 2. Antecedent agreement

Clarendon argues that it has fulfilled each element of its reformation claim.  First, Clarendon argues that it has shown by clear and convincing evidence that the parties did not intend for Clarendon to provide general liability insurance for all of Buena Vista's properties, and that the correspondence between the parties reflects that antecedent agreement.

Although reformation requires sufficient proof of an antecedent agreement, there "need not be a binding agreement prior to the writing of which reformation is sought." *De Tweede v.*

OPINION AND ORDER - 9

*Barnett Estate*, 85 P.2d 361, 363 (Or. 1939). It is required, however, that the parties had previously reached a complete mutual understanding with respect to all of the essential terms of their agreement, otherwise there would be no standard by which the writing could be reformed. *Manning Lumber Co. v. Voget*, 216 P.2d 674, 680 (Or. 1950). The parties' conduct after entering into a contract can be used to support the existence of an antecedent agreement. *See Ellison v. Watson*, 633 P.2d 840, 844 (Or. Ct. App. 1981).

Buena Vista's statements in its February 2005 email to Clarendon show that at that time, Buena Vista wanted to add liability coverage for only the 269 A Avenue, Lake Oswego property. Buena Vista requested general liability coverage "specific to [that] location only," and Clarendon explicitly agreed by stating that it would "take care of it with a designated premises [endorsement]." Rossmiller Decl., Ex. 2, p. 10.

Meyers contends that the designated premises endorsement could not have been agreed upon by Buena Vista because it was never drafted. Meyers also argues that because Buena Vista never received a copy of the full policy, it could not have agreed to limiting general liability insurance to only one premises. However, the antecedent agreement required for reformation can be inferred from oral or written evidence. *DeTweede*, 85 P.2d at 363.

The parties' correspondence in this case reflects their antecedent agreement. Buena Vista communicated with Clarendon through its insurance agent, minimizing the risk that confusion about insurance terms could have resulted in a lack of agreement.[1] Buena Vista made no objection to Clarendon's statement that it would add coverage for 269 A Avenue through a

---

[1] If there were no agreement, the result would nevertheless mean a lack of coverage for Buena Vista.

OPINION AND ORDER - 10

designated premises endorsement.  It similarly made no objection when liability coverage was

deleted after that property was sold.  If it had wanted coverage for all of its properties, Buena

Vista presumably would have responded accordingly.  Additionally, the fact that Buena Vista

paid, without question, a premium of only $92 for the coverage shows that Buena Vista knew the

policy was limited to one property, particularly in contrast to the $205,572 it paid Quanta for

general liability coverage.

Buena Vista's understanding of the policy's terms is also reflected in its request for

coverage for two other specific properties in April 2005.  Buena Vista asked Clarendon via email

to add two additional A Avenue properties to its policy, stating that "[n]either of these two

buildings are insured elsewhere. We would like for you to put them on our policy. we [sic] talked

to Roger and he only wants liability insurance on these two properties."  Rossmiller Decl., Ex. 2,

pp. 11-12.  Clarendon responded that it would "just endorse these two locations onto the

Clarendon policy for liability only, no building coverage." *Id.*

Meyers contends that Clarendon misinterpreted Buena Vista's April 2005 request.

According to Meyers, the emails can be read either as limiting liability coverage to the two A

Avenue locations, or limiting the *type* of coverage at those two locations, the latter interpretation

reflecting Buena Vista's true intent.  Under Meyers' interpretation, Buena Vista intended to

request only liability insurance (and no property coverage) for those two properties, rather than

requesting that only those two properties be insured.  However, Meyers' interpretation seems

unlikely in light of the February 2005 emails.  If Buena Vista had intended in February to extend

liability coverage to all of its properties, it would not have needed to request liability coverage for

two more properties just two months later.  Furthermore, the fact that Clarendon agreed to

OPINION AND ORDER - 11

"endorse" the two additional properties suggests that it planned to insure them with a designated premises endorsement, just as it had with the 269 A Avenue property.

Finally, the fact that Buena Vista continued its general liability coverage policies with Quanta and North American shows that, unless Buena Vista wanted to spend money on redundant coverage, it could not have intended for the Clarendon policy to provide liability coverage for all of its properties. Clarendon has shown by clear and convincing evidence that the parties agreed to a liability insurance policy specific to the A Avenue locations.

### 3. Mutual mistake

Although Clarendon told Buena Vista it would add liability coverage through a designated premises endorsement, it neglected to actually attach the endorsement to the written policy. Clarendon argues that the omission of the designated premises endorsement was a mutual mistake of the parties.

Mutual mistake in relation to reformation constitutes a mistake shared by both parties. *Manning*, 216 P.2d at 675-676. Where there is clear proof of a previous oral contract to which the written contract can be made to conform and a mistake has been made in reducing the oral contract previously made to writing, the party prejudiced by the mistake in the writing is entitled to equitable relief. *De Tweede*, 85 P.2d at 363.

Meyers argues that because Buena Vista never received a copy of the policy, it could not have known that Clarendon failed to attach the endorsement and therefore no mutual mistake exists. However, the parties' correspondence reflects their agreement, as does their behavior after the formal contract was created.

/ / / /

OPINION AND ORDER - 12

As discussed above, Buena Vista did not object to a designated premises endorsement when Clarendon proposed one. Buena Vista paid its premiums without question, and did not object when liability coverage was removed from the policy after the 269 A Avenue property was sold. Although Clarendon alone omitted the endorsement form, and may have subsequently failed to provide a copy of the policy to Buena Vista, Buena Vista's conduct shows that it too was mistaken as to the error in executing the formal contract. Buena Vista continually showed its agreement to the policy it received, regardless of the existence of a separate endorsement form. The omission of the designated premises form was therefore a mutual mistake of the parties.

### 4. Gross Negligence

Conduct, in order to bar reformation, must go beyond mere oversight, inadvertence, or mistake and, instead, must amount to a degree of inattention that is inexcusable under the circumstance. *Wolfgang v. Henry Thiele*, 275 P. 33, 36 (Or. 1929). In the context of mistakes of fact, a party is grossly negligent if it fails to obtain information 'readily available' to it. *Walcutt v. Inform Graphics, Inc.*, 817 P.2d 1353, 1355-1356 (Or. Ct. App. 1991). Meyers argues that Clarendon was grossly negligent when it failed to notice the omission of the endorsement each time the policy changed.

A party's failure to read and understand a contract, by itself, will generally not constitute gross negligence sufficient to bar reformation. *Wolfgang*, 275 P. at 36. Meyers cites *Main v. Howard* to stand for the proposition that repeatedly failing to read a contract constitutes gross negligence. 629 P.2d 870 (Or. Ct. App.1981). In *Main,* the court found that a party's failure to read three separate documents before signing them weighed against her reformation claim. *Id.* at 804-805. However, the court concluded that plaintiff was not entitled to reformation based on

OPINION AND ORDER - 13

several factors in addition to her failure to read documents. *Id.* The court found, for example, that her testimony was inconsistent with statements made at the time the contract was formed, and that her behavior after the contract was formed reflected her knowledge and agreement to its material terms. *Id.*

Although Clarendon may have failed to notice its mistake on multiple occasions, the failure to notice does not rise to the level of gross negligence in light of the record as a whole. Unlike the plaintiff in *Main*, Clarendon's assertions are not inconsistent with its prior statements or its actions when forming the contract. Buena Vista had not given Clarendon any reason to believe the policy contained errors. Indeed, Clarendon may not have felt compelled to check the policy for potential mistakes considering Buena Vista's cooperation throughout the term of the contract.

Additionally, even if Clarendon was negligent in failing to notice errors in the contract, clearly established negligence may not be a sufficient ground for refusing reformation if it appears that the other party has not been prejudiced by the negligence. *Edwards Farms, Inc. v. Smith Canning & Freezing Co.*, 251 P.2d 133, 135-136 (Or. 1952). Throughout its dealings with Clarendon and Hallmark, Buena Vista had general liability insurance policies for its homebuilding projects through Quanta and North American. Failure to reform the contract could entail substantial costs to Clarendon and Hallmark which were not accounted for in the small amount of premiums paid by Buena Vista. Buena Vista contracted for and received coverage for three specific commercial properties through Clarendon and Hallmark. Clarendon's failure to notice an error in the written contract should not result in coverage for properties that Buena Vista did not request coverage for, and in fact had already covered through other insurers.

OPINION AND ORDER - 14

**CONCLUSION**

For the foregoing reasons, plaintiffs' Motions for Summary Judgment [15 and 18] are

GRANTED, and defendants' Cross-Motions for Summary Judgment [21 and 24] are DENIED.

Plaintiffs' counsel shall confer with defendant's counsel and submit a proposed judgment to the

court.

IT IS SO ORDERED.

DATED this _13_ day of December, 2012.

_____
Ancer L. Haggerty
United States District Judge

OPINION AND ORDER - 15